# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

     Plaintiff,

  v.

PETER B. LAZARE, *et al.*,

     Defendants.

Case No. 2:14-cv-01075-APG-VCF

**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) GRANTING LAZARE'S MOTION FOR SUMMARY JUDGMENT ON COUNT II, (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' COUNTERMOTION FOR SUMMARY JUDGMENT, AND (4) DENYING LAZARE'S MOTION FOR LEAVE**

(ECF Nos. 34, 36, 44, 59)

   Peter B. Lazare is the trustee of the Jon J. Edelman Trust ("Edelman Trust"). One of the beneficiaries of the Edelman Trust is Jon Edelman, a tax-dodger who owes the United States government $334.8 million. When it appeared that the government may be able seize the Edelman Trusts' assets, Lazare and Edelman settled a new trust in Nevada, the Aurora Borealis Trust, and transferred an income stream to it.

   The government filed this action against Lazare and the Aurora Borealis Trust's trustees (Ian Williams and Premier Trust, Inc.) to have the transfer set aside. The government alleges that the transfer violated Nevada's Uniform Fraudulent Transfer Act, Nev. Rev. Stat. §§ 112.180, *et seq*. (Count I). It also alleges that Lazare is personally liable under the Federal Priority Statute, 31 U.S.C. § 3713(b), because he transferred the income stream before paying a debt owed to the United States (Count II).

   All parties have moved for summary judgment on both counts. The government produced evidence supporting its fraudulent-transfer claim. The defendants did not offer sufficient evidence to support their allegations that (1) the government's claim, as defined by Nev. Rev. Stat. § 112.150(3), did not arise before the transfer and (2) the Edelman Trust was solvent. Therefore, I grant summary judgment in the government's favor on Count I. However, I grant

summary judgment in Lazare's favor on Count II because the government did not support its allegation that, when the transfer occurred, the Edelman Trust owed the government a debt within the meaning of 31 U.S.C. § 3713(b).

I.   **BACKGROUND**

   A.   **Jon Edelman**

   In the 1980s, Jon Edelman "was on top of the world. He made a lot of money in the tax shelter business and lived an extravagant lifestyle." *Acheff v. Lazare*, No. 12-CV-100, 2014 WL 894491, at *1 (D.N.M. Jan. 29, 2014). In 1984, his 55-foot yacht, the *Elusive*, won the Astor Cup in New York. *Id.* In 1989, he bought property in Taos, New Mexico consisting of 30 acres, an 8,500 square-foot residence, a 2,200 square-foot guesthouse, an indoor swimming pool, and a five-car garage. *Id.* at *2 n.3.

   Edelman's success collapsed in 1989 when he and his business partner Bernhard Manko were indicted on 32 tax-fraud charges in the United States District Court for the Southern District of New York. *Id.* (citing *United States v. Manko*, 979 F.2d 900, 901–02 (2d Cir. 1992)). In 1991, Edelman was convicted, sentenced to serve five years in prison, and ordered to pay the United States $334.8 million. *Id.*; (Dkt. #1 at 2; #34-1 at 5.) He served two months at the Federal Correctional Institute in Florence, Colorado and then escaped. *Acheff*, 2014 WL 894491, at *2.

   Edelman, his wife, and their three children evaded capture for more than two years as they sailed the South Pacific on the *Elusive*. *Id.* The family used assets from a trust (called the Delos Trust) that Edelman had funded with $5 million before reporting to prison. *Id.* As Edelman and his family hid in the South Pacific, the mortgage on the Taos property went into default. *Id.* at *3. At the foreclosure sale, the original seller, William Acheff, bought the property. *Id.*

   In November of 1995, Edelman was detained by authorities on the island nation of the Republic of Vanuatu; he was turned over to the U.S. Marshals and incarcerated in Texas. *Id.* A year later, Edelman's mother Mildred Ash settled a spendthrift trust called the Jon J. Edelman Trust ("Edelman Trust"). *Id.* It named Edelman and his three minor children as beneficiaries and was funded with $18,000 per month from Mildred Ash's estate. *Id.*

1    A year after the Edelman Trust was settled, Edelman contacted Acheff about re-

2    purchasing the Taos property for $2 million. *Id.* Acheff and Edelman agreed to the following

3    terms: $100,000 in earnest money; a down payment of $900,000 at closing; semi-annual interest-

4    only payments over a five-year period at 8%; and a balloon payment of $1 million after five

5    years. *Id.* Edelman substituted the Edelman Trust as the buyer, which supplied the $100,000 in

6    earnest money. *Id.* He then transferred $900,000 from the Delos Trust to the Edelman Trust,

7    which made the down payment. *Id.*

8    Edelman was released from prison in 1999 and resided on the Taos property for the next

9    twelve years. *Id.* at *4. From 2001 to 2005, the Edelman Trust made the interest payments with

10   funds supplied by the Delos Trust. *Id.* In 2004, Edelman's friend of 30 years, Peter Lazare,

11   became the trustee of the Edelman Trust. *Id.* When the balloon payment approached, the

12   Edelman Trust was insolvent. *Id.* Acheff agreed to a loan modification that delayed the balloon

13   payment and continued the interest-only payments. *Id.* The balloon payment was delayed for

14   years as 13 more loan modifications were negotiated. *Id.*

15   **B.    The New Mexico Action**

16   Acheff's patience ran out in 2012. *Id.* He commenced an action against the Edelman

17   Trust and Lazare, as trustee, to collect on the defaulted promissory note and foreclose the

18   mortgage. *Id.* The United States government, which held tax liens and judgments against

19   Edelman, intervened and transformed Acheff's foreclosure action into a tax-collection action. *Id.*

20   The government alleged that the Delos Trust was Edelman's alter ego, it moved for a preliminary

21   injunction enjoining Lazare from transferring the Edelman Trust's assets; and it requested a

22   constructive trust against the Edelman Trust at trial. (Dkt. #1 at ¶¶ 14, 15.)

23   In early October of 2013, the presiding magistrate judge conducted a hearing on the

24   government's motion for a preliminary injunction and recommended that Lazare be enjoined

25   from transferring the Edelman Trust's assets. (*Id.* at ¶ 16); *Acheff v. Lazare*, No. 1:12-CV-00100

26   JCH/RH, 2013 WL 5912117, at *3 (D.N.M. Oct. 11, 2013). While objections to the magistrate

27   judge's recommendation were pending, Lazare, Edelman, and Ian Williams (as trustee) settled a

28

1   new trust under Nevada law called the Aurora Borealis Trust. (Dkt. #1 at ¶¶ 19, 26, 27; #35-10.)

2   On October 28, 2013, the Edelman Trust disclaimed its interest in the Taos property. (Dkt. #43-

3   1.)  Two days later, Lazare decanted the Edelman Trust's interest in the Mildred Ash estate into

4   the Aurora Borealis Trust. (Dkt. #35-10.)  This left the Edelman Trust with $7,000 in cash, a

5   retainer at the law firm of VanAmberg, Rogers & Yepa, and a lien in excess of $140,000 on the

6   *Elusive*.  The district judge subsequently adopted the magistrate judge's recommendation and

7   enjoined Lazare from transferring the Edelman Trust's assets. (Dkt. #1 at ¶ 18.)

8        Following a trial on the merits, the court held that the Delos Trust is Edelman's alter ego

9   and that "$1,601,000 was funneled from the Delos Trust through the Edelman Trust[,which]

10  should have gone to the government to partially satisfy Edelman's enormous tax debt." *Acheff*,

11  2014 WL 894491, at *11.  The court awarded the government a constructive trust against the

12  Edelman Trust for $1,601,000, permanently enjoined the Edelman Trust from liquidating or

13  transferring any assets, and held that the government may seize and collect against the *Elusive*

14  and the Taos property, subject to any of Acheff's superior encumbrances. *Id.* at *15.  The court

15  also held that "[a]ny amount the USA collects on the Taos property shall be credited against the

16  $1,601,000 constructive trust." *Id.*

17       **C.    The Nevada Action**

18       On April 15, 2014, Lazare, as trustee for the Edelman Trust, executed an "assignment of

19  funds," which purported to satisfy the constructive trust by assigning the government "the

20  Edelman Trust's right, title, and interest in and to the One Million Six Hundred One Thousand

21  Dollars ($1,601,000.00)." (Dkt. 44-1 at Ex. G.)  However, when the government attempted to

22  collect, it discovered that Lazare had transferred the Edelman Trust's primary income stream to

23  the Aurora Borealis Trust. (Dkt. #1 at ¶ 26.)

24       On July 1, 2014, the government filed this lawsuit against Lazare, individually and as

25  trustee of the Aurora Borealis trust, and against the other trustees: Williams and Premier Trust,

26  Inc.  The government alleges that Lazare's October 30, 2013 transfer from the Edelman Trust to

27  the Aurora Borealis Trust was fraudulent and that Lazare is personally liable for the fraudulent

28

1    transfer under 31 U.S.C. § 3713(b).  On July 8, 2015, and August 26, 2015, the government

2    attempted to sell the Taos property at two public auctions. (Dkt. #56.)  No bids were received.

3    (*Id.*)

4    **II.    ANALYSIS**

5         Summary judgment is appropriate if the pleadings, discovery responses, and affidavits

6    demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to

7    judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the

8    outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9    (1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict

10   for the nonmoving party." *Id.*

11        The party seeking summary judgment bears the initial burden of informing the court of the

12   basis for its motion and identifying those portions of the record that demonstrate the absence of a

13   genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden

14   then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine

15   issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

16   2000).  I view the evidence and reasonable inferences in the light most favorable to the

17   nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

18        The parties' summary judgment motions present three questions: (1) whether the

19   government's claim is moot; (2) if not, whether Lazare fraudulently transferred the Edelman

20   Trust's interest in the Ash Estate on October 30, 2013; and (3) if so, whether Lazare is personally

21   liable for under 31 U.S.C. § 3713(b).

22        **A.    This Action is not Moot.**

23        Mootness is a legal doctrine that frames the Constitution's case-or-controversy clause in

24   time. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000);

25   *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).  The case-or-controversy must exist at the

26   commencement of the litigation and continue throughout its lifespan. *Laidlaw*, 528 U.S. at 180;

27   *Foster*, 347 F.3d at 745.  The defendants argue that this action is moot because the government

28

1   has taken the Taos property, the value of which "greatly exceeds the constructive trust amount."

2   (Dkt. #58 at 9:8, 10:5-11.)  Thus, they argue, the constructive trust has been paid off because the

3   government has received more than sufficient value.

4           The defendants' argument misconstrues the facts.  The Edelman Trust disclaimed its

5   interest in the Taos property on October 28, 2013. (Dkt. #44-1 at Ex. B.)  Three months later, the

6   New Mexico court awarded the government a constructive trust over the Taos property and held

7   that any amount recovered from the sale of that property must "be credited against the $1,601,000

8   constructive trust." *See Acheff*, 2014 WL 894491, at *15.  The government has been unable to sell

9   the Taos property and therefore the constructive trust has not been satisfied. (Dkt. #56.)  Because

10  the government has not received the full amount of the constructive trust, this action is not moot.

11          The defendants alternatively argue that this action became moot on April 15, 2014 when

12  Lazare, as trustee of the Edelman Trust, executed an "assignment of funds." (Dkt. #44-1 at Ex.

13  G.)  The assignment purports to satisfy the constructive trust by assigning to the government "all

14  of the Edelman Trust's right, title, and interest in and to the One Million Six Hundred One

15  Thousand Dollars ($1,601,000.00)." (*Id.*)  However, there is no evidence that the Edelman Trust

16  had funds to satisfy this assignment.  Merely assigning a right to funds is different than paying the

17  actual funds.  The government has not been paid the full amount of satisfied the constructive

18  trust, so this action is not moot.

19      **B.      The Government is entitled to Summary Judgment on its Fraudulent
                 Transfer Claim.**
20

21          Three types of transfers may be set aside under Nevada's Uniform Fraudulent Transfer

22  Act: actual fraudulent transfers, constructive fraudulent transfers, and transfers by insolvent

23  debtors. *Herup v. First Boston Fin., LLC*, 162 P.3d 870, 873 (Nev. 2007).  The gravamen of the

24  government's summary judgment motion is that Lazare's October 30, 2013 transfer from the

25  Edelman Trust to the Aurora Borealis Trust was constructively fraudulent and made by an

26  insolvent debtor.

27

28

A transfer is constructively fraudulent if (1) the debtor did not receive reasonably equivalent value in exchange for the transfer and (2) the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due." Nev. Rev. Stat. § 112.180(1)(b); *Herup*, 162 P.3d at 873. A transfer by an insolvent debtor is fraudulent if (1) a creditor's claim arose before the transfer was made, (2) the debtor did not receive reasonably equivalent value for the transfer, and (3) the debtor was insolvent or became insolvent because of the transfer. Nev. Rev. Stat. § 112.190(1); *Herup*, 162 P.3d at 873. A debtor is considered insolvent if "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation" or the "debtor is generally not paying his or her debts as they become due." Nev. Rev. Stat. § 112.160.

The government satisfied its initial burden by proffering evidence in support of each of these elements. First, it is undisputed that the Edelman Trust received nothing in exchange for transferring the income stream to the Aurora Borealis Trust. (Dkt. #1 at ¶ 27; Dkt. #44 at 14:5–6.) Second, the government demonstrated that the Edelman Trust was insolvent at the time of the transfer. When the transfer occurred, the Edelman Trust was defending against a foreclosure action because it was unable to make the balloon payment. *Acheff*, 2014 WL 894491, at *4. Third, the government demonstrated that its claim arose before the transfer was made. "Claim means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Nev. Rev. Stat. § 112.150(3). When the transfer occurred, the Edelman Trust and Lazare were named defendants and cross-defendants in the underlying action. *See Acheff*, 2014 WL 894491, at *1. The government had obtained a recommendation from the presiding magistrate judge that Lazare be enjoined from transferring the Edelman Trust's assets. *Acheff*, 2013 WL 5912117, at *3. Shortly after that recommendation, Lazare transferred the income stream from the Edelman Trust into the Aurora Borealis Trust.

1      In response, the defendants argue that (1) government's claim did not arise before the

2    transfer was made and (2) the transfer did not render the trust insolvent.  But, they fail to raise an

3    issue of fact with regard to either element.

4       The defendants argue that the government's claim did not arise before the transfer was

5    made because the government requested a constructive trust at trial, and not in its pleadings. (Dkt.

6    #44 at 13.)  As defined by Nev. Rev. Stat. § 112.150(3), a "claim" does not need to be "reduced

7    to judgment."  "Claim means a right to payment, whether or not the right is reduced to judgment,

8    liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

9    equitable, secured or unsecured." Nev. Rev. Stat. § 112.150(3).  The transfer was made shortly

10   after the New Mexico magistrate judge recommended that no assets be transferred from the

11   Edelman Trust because the government was likely to prevail on its claims.  The Edelman Trust

12   and Lazare were parties in that action.  Thus, the government's claim arose before the transfer.

13      The defendants next argue that the transfer of the income stream did not render the

14   Edelman Trust insolvent because the trust retained an interest in the Taos property, $7,000 in

15   cash, a retainer at the law firm of VanAmberg, Rogers & Yepa, and a lien in excess of $140,000

16   on the *Elusive*. (Dkt. #44 at 13–14.)  This argument also fails as a matter of law.  A debtor is

17   presumed insolvent if the debtor is "generally not paying his or her debts as they become due."

18   Nev. Rev. Stat. § 112.160.  It is undisputed that Acheff commenced a foreclosure action against

19   the Edelman Trust because it defaulted on the promissory note and was unable to pay the balloon

20   payment. *See Acheff*, 2014 WL 894491, at *1.

21      Nor could the value of the Taos property have rendered the Edelman Trust solvent.  The

22   Edelman Trust disclaimed its interest in the Taos property on October 28, 2013 and transferred

23   the income stream two days later. (*See* Dkt. ##35-10; 43-1.)  After the income stream was

24   transferred, the Edelman Trust's remaining assets were limited to $7,000 in cash, a retainer at the

25   law firm of VanAmberg, Rogers & Yepa, and the lien on the *Elusive*.  In fact, Lazare argued in

26   the underlying action that the actual value of these assets was so low that the trust could not

27   afford the $1,000 filing fee for its tax return. (Dkt. #57-2 at Ex. 10.)

28

The defendants have failed to set forth specific facts supporting their arguments that (1) the government's claim did not arise before the transfer was made and (2) the transfer did not render the trust insolvent.  Because the government is entitled to judgment as a matter of law on its constructive-fraud and insolvent-debtor arguments under § 112.180(1)(b) and § 112.190(2), I decline to address the government's additional argument that the transfer was intentionally fraudulent under § 112.180(1)(a).

> ### C.     Lazare is entitled to Summary Judgment on the Government's Personal-Liability Claim under 31 U.S.C. § 3713.

The Federal Priority Statute requires the government to be paid first when a debtor does not have enough assets to pay all of its creditors. 31 U.S.C. § 3713.[1]  If the debtor's representative pays any part of the debtor's debt before paying the government, the representative becomes personally liable to the government for the amount of the payment. *United States v. Cole*, 733 F.2d 651, 654 (9th Cir. 1984).  The statute is "liberally construed so as to effect the public purpose of securing debts owed to the United States." *United States v. Whitney*, 654 F.2d 607, 609 (9th Cir. 1981).  However, a "prerequisite" must exist before the statute applies: "a debt due to the United States." *In re Metzger*, 709 F.2d 32, 34 (9th Cir. 1983).

The government's claim under 31 U.S.C. § 3713 rests on the same action as its fraudulent transfer claim: Lazare's October 30, 2012 transfer of the income stream from the Edelman Trust

---

[1] In its current form, the statute states:

(a)(1) A claim of the United States Government shall be paid first when—

    (A) a person indebted to the Government is insolvent and—

        (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

        (ii) property of the debtor, if absent, is attached; or

        (iii) an act of bankruptcy is committed; or

    (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

to the Aurora Borealis Trust.  The government argues that Lazare is personally liable under 31

U.S.C. § 3713 because he transferred the Edelman Trust's assets before paying the government.

The government's argument suffers from a fatal flaw.  While the government's fraudulent

conveyance *claim* under Nevada law arose before the transfer was made (*see* Nev. Rev. Stat. §

112.150(3)), the Edelman Trust did not yet owe a *debt* to the government under 31 U.S.C. § 3713.

In *Metzger*, the Ninth Circuit held that 31 U.S.C. § 3713 was not violated when a criminal

defendant transferred title to his boat after he was convicted but before he was sentenced because,

at the time of the transfer, the existence of a government debt was contingent on the sentencing

judge's discretionary decision to impose a fine as part of the sentence. 709 F.2d at 34.  Analogous

circumstances exist here.  At the time of the transfer, the parties were still litigating the merits of

the government's claim against the Edelman Trust.  Although the New Mexico magistrate judge

recommended that Lazare be enjoined from transferring assets, the Edelman Trust did not yet owe

a debt to the government at that time. *See id.* at 34 ("Metzger [correctly] asserts there was no debt

until the time of sentencing since until that time it was uncertain not only what the amount of any

fine to be imposed would be, but more significantly, whether in fact any fine would be

imposed.").[2]  Therefore, Lazare is not personally liable under 31 U.S.C. § 3713.

### D.    Lazare's Untimely Countermotion for Summary Judgment and Motion for Leave.

The government argues that I should not consider Lazare's countermotion for summary

judgment because it is untimely. (Dkt. #57 at 15.)  Although untimely, it is embedded within

Lazare's timely opposition to the government's motion for summary judgment. (*See* Dkt. ##43,

44.)  Because both documents are identical and "[c]ases should be decided upon their merits

whenever reasonably possible," I deny the government's request. *Eitel v. McCool*, 782 F.2d 1470,

[2] *See also United States v. Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996) ("In order for liability to attach, the executor must have knowledge of the **debt owed by the estate** to the United States or notice of facts that would lead a reasonably prudent person to inquire as to the **existence of the debt owed** before making the challenged distribution or payment.") (emphasis added).

1    1472 (9th Cir. 1986) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.

2    1985)).

3         Lazare also moved for leave to file a sur-reply, stating that he "inadvertently overlooked

4    case authority, including Ninth Circuit authority," when addressing the government's personal

5    liability claim under 31 U.S.C. § 3713. (Dkt. #59.)  The authority Lazare allegedly overlooked

6    includes *In re Metzger*, 709 F.2d 32 (9th Cir. 1983).  The government opposes the request,

7    arguing that (1) none of the cases he overlooked is new and (2) Lazare did not overlook *Metzger*

8    because he cited it in his opposition.  Because Lazare cited *Metzger* in his opposition, and

9    because I grant summary judgment in Lazare's favor on the government's 31 U.S.C. § 3713

10   claim, his motion for leave is denied.

11   **III.    CONCLUSION**

12        IT IS HEREBY ORDERED that the government's motion for summary judgment **(Dkt.**

13   **#34) is GRANTED in part and DENIED in part** as set forth above; Lazare's motion for

14   summary judgment on count II **(Dkt. #36) is GRANTED**; the defendants' countermotion for

15   summary judgment **(Dkt. #44) is GRANTED in part and DENIED in part** as set forth above;

16   and Lazare's motion for leave to file a sur-reply **(Dkt. #59) is DENIED**.

17        IT IS FURTHER ORDERED that Lazare's transfer of the Edelman Trust's beneficial

18   interest in the Estate of Mildred Ash (i.e., the income stream from the Estate's ownership of real

19   property in Las Vegas, Nevada) to the Aurora Borealis Trust was a fraudulent conveyance under

20   Nevada law.  That transfer is hereby set aside.  Pending entry of final judgment, Peter Lazare, Ian

21   Williams, Premier Trust, Inc., and the Aurora Borealis Trust are enjoined from disbursing,

22   encumbering, or otherwise transferring any assets belonging to the Edelman Trust or the Aurora

23   Borealis Trust, other than to the United States.

24        IT IS FURTHER ORDERED that the government shall prepare a form of judgment and

25   proposed injunction.

26        DATED this 4th day of March, 2016.

27                                                                         _____
                                                                           ANDREW P. GORDON
28                                                                         UNITED STATES DISTRICT JUDGE